*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* MOORE/NOBLE, Minors.

UNPUBLISHED
September 22, 2022

Nos. 360774; 360785
Saginaw Circuit Court
Family Division
LC No. 20-036107-NA

Before: M. J. KELLY, P.J., and CAMERON and HOOD, JJ.

PER CURIAM.

In these consolidated appeals,[1] respondent-mother and respondent-father appeal by right the trial court's order terminating their parental rights to their minor children, GAM and KRN, under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist), (g) (failure to provide proper care and custody), and (j) (reasonable likelihood of harm if returned to parent). On appeal, respondents argue that the trial court (1) erred by determining that it was in the children's best interests to terminate their parental rights; and (2) should have created a juvenile guardianship with the children's maternal grandmother instead of terminating respondents' parental rights. We affirm.

## I. BACKGROUND FACTS

In June 2020, the Michigan Department of Health and Human Services (MDHHS) filed a petition seeking removal of the children from respondents' home. The petition alleged that it was contrary to the children's welfare to remain in respondents' care because of alcohol abuse and continued domestic violence[2] between respondent-mother and respondent-father in the presence

---

[1] *In re Moore/Noble Minors*, unpublished order of the Court of Appeals, entered May 6, 2022 (Docket Nos. 360774 and 360785).

[2] The conduct at issue included physical abuse by respondent-father toward respondent-mother, including several instances of respondent-father physically striking and pushing respondent-mother. Further, there was testimony that respondent-mother flicked a cigarette at respondent-father through the window of his vehicle (apparently prompting him to "sideswipe" her with his

-1-

of the children. The children were removed and placed with their maternal grandmother, who also had a guardianship over respondent-mother's three older children.[3] The trial court ordered respondent-mother to participate in and benefit from a substance abuse assessment and domestic violence counseling, participate in and follow the recommendations of a psychological assessment, find and maintain adequate housing, and maintain contact with her case worker. Regarding respondent-father, the trial court ordered that he participate in psychological and substance abuse assessments, follow the recommendations from these assessments, attend and benefit from classes for anger management and domestic violence, as well as individual counseling, and sign all required releases.

Respondent-mother failed to substantially engage in services and did not benefit from those she engaged in. Although respondent-father completed services, MDHHS concluded, based on his continued conduct, that he failed to benefit from any of them. MDHHS filed a supplemental petition in January 2022 requesting termination of respondents' parental rights. The children's caseworker testified that respondent-mother was referred to multiple services for substance abuse, domestic violence, housing, employment, and mental health, but respondent-mother failed to benefit from substance abuse treatment. This was exhibited by her multiple relapses, her failure to consistently call in to see whether she was subject to random drug screens, her failure to obtain and maintain suitable housing and legal employment, and her failure to rectify her domestic violence issues. The children's caseworker also testified about respondent-father, noting that although he completed all services requested by MDHHS, including the anger management and domestic violence courses, respondent-father failed to show he benefited from these services. Notably, respondent-father continued to physically abuse respondent-mother, including incidents in front of the children. He was also confrontational with caseworkers, including yelling at them while using various expletives and derogatory words.

The children's caseworker also testified that both parents bribed the children to lie to their caseworkers and their grandmother about what happened during parenting time. And the caseworker testified that although the children had some behavioral issues, they were doing well in their placement with their maternal grandmother. The children's grandmother expressed a willingness to adopt them, but did not want to care for the children under a juvenile guardianship because she did not want to have further contact with respondent-father.

After the close of proofs, the trial court concluded that the statutory grounds for termination pursuant to MCL 712A.19b(3)(c)(*i*), (g), and (j) were met, and that it was in the children's best interests to terminate respondents' parental rights. In its written opinion, the trial court noted the

vehicle) and another instance in which she "smashed out the back of [respondent-father's] vehicle." There was also evidence that both respondents had hit one another in front of the children.

[3] Respondent-mother's three older children were not subject to the petition at issue in this case. They were, however, in a legal guardianship with the maternal grandmother, which resulted from a separate child abuse and neglect proceeding. That proceeding was related to a petition that alleged respondent-mother was arrested for driving while intoxicated while her three older children were in the vehicle. The children were subsequently removed from her care.

fact that the maternal grandmother would not agree to a guardianship over GAM and KRN because she did not want to have contact with respondent-father. This appeal followed.

## II. STANDARD OF REVIEW

"[T]o terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). "Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013).

This Court reviews a trial court's factual findings and its best-interests determinations for clear error. *In re Sandborn*, 337 Mich App 252, 272-276; 976 NW2d 252 (2021). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004).

## III. BEST INTERESTS

Neither respondent-mother nor respondent-father challenges the statutory grounds for termination. Instead, both argue that termination of their parental rights was not in the children's best interests because the trial court failed to place appropriate weight on the bond shared between the parents and the children, the positive parenting visits, and the harmful effect termination would have on the children. We disagree.

### A. LEGAL STANDARD FOR BEST INTERESTS

When making its best-interests determination, the trial court should focus on the child, not the parent. *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016). In making this determination, a trial court may consider "the child's bond to the parent, the parent's parenting ability, [and] the child's need for permanency, stability, and finality . . . ." *Olive/Metts*, 297 Mich App at 41-42 (citations omitted). The trial court may also consider "a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption," *In re White*, 303 Mich App 701, 714; 846 NW2d 61 (2014), and a parent's substance abuse problems, *In re AH*, 245 Mich App 77, 89; 627 NW2d 33 (2001). "[T]he fact that the children are in the care of a relative at the time of the termination hearing is an explicit factor to consider in determining whether termination was in the children's best interests." *Olive/Metts*, 297 Mich App at 43 (quotation marks and citation omitted). A child's placement with a relative weighs against termination, and as a result, a trial court must consider a child's relative placement in determining whether terminations is in a child's best interest. *In re Mason*, 486 Mich 142, 164; 782 NW2d 747 (2010).

### B. ANALYSIS

-3-

## 1. RESPONDENT-MOTHER

The trial court found that it was in the children's best interests to terminate respondent-mother's parental rights. The trial court found that GAM and KRN were both "emotionally affected by their parents' toxic environment of substance abuse and domestic violence." The trial court noted that although respondents "express[ed] love for [her] children" and was bonded to them, the "most consistent and best parenting time . . . occurred when she was sober and becoming healthy" during her participation in an inpatient substance abuse treatment program. The trial court noted that the children were "strongly bonded" to the maternal grandmother, who had provided them with "consistent, constructive, and loving support" during the placement. It also found that their physical and emotional needs were being met, and that GAM and KRN were "very bonded to their siblings who also live with them in their grandmother's home." The trial court believed that GAM and KRN deserved a "future outside of the environment of domestic violence and substance abuse they experienced in the home of their parents." It further found that respondent-mother had "not sufficiently engaged in services to receive any benefit for either substance abuse or domestic violence." And the trial court found that the children's placement with their grandmother did not weigh against termination.

The trial court did not clearly err when it found that termination of respondent-mother's parental rights was in the best interests of GAM and KRN. Respondents assert that their bonds with GAM and KRN, and their positive parenting visits, weighed against termination. These, however, are only two of the factors the trial court could consider in determining the children's best interests. See *White*, 303 Mich App at 714; *Olive/Metts*, 297 Mich App at 41. The trial court was permitted to give greater weight to other facts, such as substance abuse and domestic violence, failure to follow the case service plans, and the children's need for permanency, stability, and finality.

Additionally, it was not error for the trial court to find that the children's relative placement did not weigh against termination. The trial court acknowledged that a child's relative placement typically weighs against termination. *Olive/Metts*, 297 Mich App at 43. But, here, it did not clearly err in determining that the children's relative placement did not weigh against termination of parental rights because of other aggravating facts of the case and because the children's grandmother would not agree to a juvenile guardianship in lieu of termination.

The trial court did not clearly err in finding that respondent-mother's failure to resolve her substance abuse issues favored termination. See *AH*, 245 Mich App at 89. Respondent-mother failed to consistently attend substance abuse treatment, complete drug tests, and remain substance-free throughout the lower court proceedings and failed to benefit from her substance abuse treatment. Notably, although she attended several inpatient substance abuse treatment programs, she only completed one 30-day program. She either voluntarily left or was discharged after relapsing from three other programs. She complied with her call-in requirements for drug testing only 16 percent of the time, and tested positive for marijuana on three occasions and alcohol on one occasion. The caseworker, therefore, concluded that respondent-mother had a "habit or pattern" of entering treatment and relapsing, and as a result, did not benefit from her substance abuse treatment and did not rectify her substance abuse issues. Accordingly, the trial court did not clearly err in finding that respondent-mother's substance abuse issues favored termination.

Nor was it clearly erroneous for the trial court to have found that respondent-mother's failure to resolve her domestic violence issues also weighed in favor of termination. See *Olive/Metts*, 297 Mich App at 41-42. She was referred to multiple services for domestic violence, but she failed to participate. Although much of the testimony established that she was the victim of domestic violence,[4] there was also testimony that respondent-mother hit respondent-father in front of their children, flicked a cigarette at him through his vehicle window, and "smashed" the back window of respondent-father's vehicle while intoxicated. Thus, the trial court did not clearly err in finding that respondent-mother's domestic violence issues, and her failure to resolve, favored termination of her parental rights.

Finally, the trial court did not clearly err when it found that respondent-mother's failure to comply with her case service plan weighed in favor of termination of her parental rights. See *Olive/Metts*, 297 Mich App at 41-42. Respondent-mother's case service plan required that she participate in and benefit from a substance abuse assessment and domestic violence counseling, participate in and follow the recommendations of a psychological assessment, find and maintain adequate housing, keep household bills up to date, participate in and follow suggestions from the children's therapist, and maintain monthly contact with her assigned case worker. Respondent-mother failed to adhere to any aspects of her case service plan. Thus, the trial court did not clearly err in finding that respondent-mother's failure to comply with her case service plan favored termination. Accordingly, the trial court did not clearly err in its determination that termination of respondent-mother's parental rights was in the best interests of GAM and KRN.

## 2. RESPONDENT-FATHER

The trial court found that it was in the children's best interests to terminate respondent-father's parental rights. In addition to bases addressed with respect to respondent-mother, including the environment of domestic violence and substance abuse, the trial court found that GAM had been abused by respondent-father and both children exhibited "negative behavior" after visits with him. The trial court noted that GAM and KRN were "still upset after the recent incident when their father banged on the windows and doors of their home." The trial court also found that although respondent-father had engaged in services, most extensively related to domestic violence, aggression, and parenting education, he had shown no benefit from those services. Thus, the trial court found that it was in the best interests of GAM and KRN to terminate respondent-father's parental rights.

The trial court did not clearly err in finding that respondent-father's failure to resolve his domestic violence issues, and his failure to comply with his case service plan by showing any benefit from the services he engaged in, favored termination. See *White*, 303 Mich App at 714.

---

[4] Although the trial court noted that respondent-mother was the victim of domestic violence, it does not appear that the court held it against respondent-mother in making its determination regarding the statutory grounds and best interests. To have done so would have been improper. See *In re Jackisch*, ___ Mich App ___; ___ NW2d ___ (2022) (Docket No. 357001); slip op at 4-5 (holding that "[t]he fact that respondent was or is a *victim* of domestic violence may not be relied upon as a basis for terminating parental rights.") (Emphasis in original).

Although respondent-father completed all services he was ordered to complete, including domestic violence and anger management services, he failed to benefit from them. Respondent-father perpetrated numerous acts of domestic violence after he engaged in services. These incidents include when he assaulted respondent-mother in front of the children and pushed her on one occasion, gave her a black eye on another, and when he sideswiped respondent-mother with his vehicle on yet another. Respondent-father also failed to demonstrate that he benefited from anger management classes, as exhibited by several outbursts in front of his caseworkers. During these outbursts, respondent-father yelled expletives and called his caseworker a derogatory word for women. There was also testimony that respondents encouraged their children to lie to their grandmother and their caseworkers about their parenting time visits. Thus, the trial court did not clearly err when it found that respondent-father's unresolved domestic violence issues and failure to benefit from services favored termination of his parental rights.

Finally, the trial court did not clearly err in finding that the children's well-being while in care, the possibility of adoption, and their need for permanency, stability, and finality favored termination of both respondents' parental rights. See *White*, 303 Mich App at 714; *Olive/Metts*, 297 Mich App at 41-42. The evidence supported a finding that neither respondent-mother nor respondent-father could provide the children with stability, permanency, and finality because of their ongoing domestic violence and substance abuse. GAM and KRN also had behavioral issues, which only arose after visits with respondent-father. There was also evidence that the physical abuse perpetrated by both respondents occasionally occurred in front of their children. The evidence also supported the trial court's finding that the maternal grandmother could provide the stability, permanence, and finality the children required. Both GAM and KRN loved their maternal grandmother and she provided for their emotional needs. Living with their grandmother also gave GAM and KRN the opportunity to develop stronger bonds with their three older siblings. The maternal grandmother was willing to adopt the two children and was able to provide them with the stability, permanency, and finality they needed, and all their needs were being met in their placement home. As a result, the trial court did not clearly err in finding that the children's well-being while in care, the possibility of adoption, and their need for permanency, stability, and finality favored termination of both respondents' parental rights.

In conclusion, although respondents may have bonded, and had positive visits, with their children, those were not the only factors at issue. Respondents' other issues, including extensive domestic violence and substance abuse, and their failure to comply with, or benefit from, their case service plans, supported the trial court's determination that it was in the best interests of GAM and KRN to terminate respondents' parental rights. Accordingly, the trial court did not clearly err in finding that termination of respondents' parental rights was in the children's best interests.

## IV. JUVENILE GUARDIANSHIP

Respondents also argue that instead of terminating their parental rights, the trial court should have created a juvenile guardianship with the children's maternal grandmother. We disagree.

A trial court may forgo termination and instead place the children in a guardianship, provided certain conditions are met. MCL 712A.19a(9)(c). MCL 712A.19a(9) provides, in relevant part:

If the agency demonstrates under subsection (8) that initiating termination of parental rights to the child is clearly not in the child's best interests, or the court does not order the agency to initiate termination of parental rights to the child under subsection (8), the court shall order 1 or more of the following alternative placement plans:

\* \* \*

(c) Subject to subsection (11), if the court determines that it is in the child's best interests, appoint a guardian for the child, which guardianship may continue until the child is emancipated.

A juvenile guardianship "allows the child to keep a relationship with the parent when placement with the parent is not possible." *In re TK*, 306 Mich App 698, 705; 859 NW2d 208 (2014). The creation of a guardianship "is done in an effort to avoid termination of parental rights." *Id*. A trial court is not required to establish a guardianship in lieu of termination if it is not in the child's best interests to do so. See MCL 712A.19a(9)(c); *In re COH*, 495 Mich 184, 201-202; 848 NW2d 107 (2014); *TK*, 306 Mich App at 707.

In this case, the trial court mentioned that the children's grandmother was unwilling to be appointed as a guardian to the children. Instead, the grandmother was willing to provide them with permanence through adoption. The trial court concluded that the children's relative placement did not weigh against termination of parental rights, and found that it was in the best interests of the children to terminate respondents' parental rights.

The trial court did not err by finding that it was in the children's best interests to terminate respondents' parental rights. Further, the trial court concluded that the children would be harmed if returned to either respondent-mother's or respondent-father's care because of their failure to rectify their substance abuse and domestic violence issues. Therefore, because the trial court properly found that it was in the best interests of the children to terminate respondent-mother's and respondent-father's parental rights, and because no one willing to serve as the children's guardian was identified in these proceedings, a juvenile guardianship was not appropriate. Accordingly, the trial court did not err when, instead of creating a juvenile guardianship, it terminated respondents' parental rights.

Affirmed.

/s/ Michael J. Kelly
/s/ Thomas C. Cameron
/s/ Noah P. Hood